Richard **WOHLENHAUS**, Appellant,

v.

**POTTAWATTAMIE MUTUAL INSURANCE ASSOCIATION**, Appellee.

No. 85–1884.

Supreme Court of Iowa.

June 17, 1987.

Rehearing Denied July 20, 1987.

Ronald W. Feilmeyer of Cambridge, Feilmeyer, Landsness & Chase, Atlantic, for appellant.

John D. Sens of Stuart, Tinley, Peters, Thorn, Smits & Sens, Council Bluffs, for appellee.

Considered by McGIVERIN, P.J., and LARSON, CARTER, WOLLE, and LAVORATO, JJ.

CARTER, Justice.

Plaintiff, Richard Wohlenhaus, appeals from judgment of the district court denying his claim for wind damage under a policy of casualty insurance underwritten by defendant, Pottawattamie Mutual Insurance Association. The claim in question arose when a tornado passed through plaintiff's farm and destroyed a metal, prefabricated machine shed, marketed under the trade name of Morton Building ®. The building was still under warranty at the time of the tornado and, under the terms of that agreement, was replaced free of charge by the manufacturer. In denying plaintiff's claim for loss of the building under the wind damage portion of its policy, the defendant insurer relied on the following policy provision:

It shall be a provision that any insurance recovery of a loss of property covered by this policy and also covered by warranty at the time of loss shall be excess of any recovery possible from the warranty, whether collectible or not.

Plaintiff demanded a jury trial with respect to his claims in this action. Although defendant initially challenged this demand for jury trial as untimely, no determination of that issue was ever made by the district court. It appears that defendant had ceased to pursue that contention prior to trial, and it does not urge on this appeal that the demand for jury trial was untimely. The case was originally assigned for jury trial to commence on or about November 26, 1985. A few days prior to that date, the court informed counsel for the parties that the trial would be bifurcated, with the "declaratory judgment portion" being tried to the court prior to any jury trial of the remainder.

Plaintiff objected to the proposed bifurcated trial procedure but appeared before the court on the date specified and participated in a presentation of evidence consisting of a written stipulation of facts and the reading of portions of certain discovery

depositions into the record. Based upon this record, the court made a written decision in which it concluded that the interpretation of the insurance policy presented only an issue of law and that there was no factual dispute upon which a jury issue might be based. The court further concluded that plaintiff was not entitled to reformation of the policy and that, under the provision of the policy set forth above, reimbursement received from the building manufacturer precluded indemnification from the insurer.

Plaintiff has appealed that determination, challenging the denial of his demand for a jury trial, the denial of his claim for reformation, the district court's interpretation of the insurance policy, and that court's refusal to apply the doctrines of reasonable expectations and implied warranty of purpose. The court of appeals upheld the district court's determination on the reformation issue but reversed that court's determination of the other issues and remanded the case for jury trial. Upon our consideration of the entire record, we affirm the decision of the court of appeals and similarly remand the case for retrial of the remaining issues to a jury. Other facts of the case bearing on our resolution of the issues will be discussed in connection with our consideration of the parties' legal arguments.

## I. *Right to Jury Trial.*

Plaintiff urges on appeal that the district court erred in invoking the so-called bifurcated procedure and that in so doing it improperly infringed on his right to a jury trial. Based upon our review of the record, we agree that the procedure invoked by the court was unorthodox and difficult to sustain under established rules of procedure.

The court's order of bifurcation purports to separate the "declaratory judgment portion" of the claim from other portions of the claim. Count II of plaintiff's five-count petition was cast in the form of a claim for a declaratory judgment. Apart from Count III, which asks for reformation of the policy and was therefore cognizable in equity, *see First National Bank in*

*Sioux City v. Curran,* 206 N.W.2d 317, 320–21 (Iowa 1973), we find nothing in the record which suggests that separate trial of any single count would be beneficial. The issues raised in Counts I, II, IV and V are so interrelated that they would best be tried in a single proceeding. Moreover, even if separate trial of the declaratory judgment had been warranted, plaintiff's demand for jury trial extended to that count as well as the other counts. It is provided in Iowa Rule of Civil Procedure 268 that the right to jury trial shall not be abridged by reason of casting otherwise legal claims in the form of a request for declaratory judgment. *See Wright v. Thompson,* 254 Iowa 342, 353–54, 117 N.W.2d 520, 527 (1962); *Ewurs v. Irving,* 344 N.W.2d 273, 276 (Iowa App.1983).

In the district court's written decision after the mini-trial of the declaratory judgment claim, it determined that plaintiff had no right to jury trial because of the absence of issues of fact to be determined by a jury. The provisions of Iowa Rule of Civil Procedure 237, involving summary judgments, provide a vehicle for pretrial determination of the existence of genuine issues of material fact. We have no provisions in our rules for a mini-trial ordered sua sponte in order to determine the absence of factual issues. In the absence of a motion under rule 237, the proper method for presenting contentions concerning the absence of legitimate factual issues in jury-demanded cases is by a motion for directed verdict or for withdrawal of specific issues from consideration by the jury.

We need not determine the validity of defendant's contention that, if the record reflects that there were in fact no genuine issues of material fact and that the district court's conclusions on the legal issues were correct, any error in the procedure invoked would be harmless. For reasons which we consider in the subsequent division, we conclude that there were legitimate factual issues for the jury's determination.

## II. *Factual Issues Presented in the Interpretation of the Policy.*

In concluding that there were no issues of fact triable to a jury, the district court

concluded that the policy language was not ambiguous, that this language supported defendant's denial of plaintiff's claim, and that there was no extrinsic evidence favoring plaintiff's proposed interpretation of the policy. The defendant urges that this was a proper approach to the issue of interpretation under the rules which we have applied in *Farm Bureau Mutual Insurance Co. v. Sandbulte*, 302 N.W.2d 104, 107–08 (Iowa 1981); *Connie's Construction Co. v. Fireman's Fund Insurance Co.*, 227 N.W.2d 207, 210 (Iowa 1975); and *C & J Fertilizer, Inc. v. Allied Mutual Insurance Co.*, 227 N.W.2d 169, 172 (Iowa 1975).

It would perhaps be possible to sustain the district court's conclusions under the cases last cited if the issue presented were solely one of interpretation of the meaning of words within a written contract. In a stipulation of facts executed by the parties it is agreed that, if called, witnesses for defendant would testify that the policy language giving rise to the present dispute was inserted in order to avoid the result which prevailed in *Gustafson v. Central Iowa Mutual Insurance Association*, 277 N.W.2d 609, 614–15 (Iowa 1979). That case was similar to the present in that it also involved a wind loss claim on a Morton Building ®. In *Gustafson* we held that, absent language in the policy so providing, amounts received by an insured under the manufacturer's warranty did not serve to reduce the casualty insurer's obligation to make payment on the same claim if it was otherwise covered by the policy.

Although plaintiff's claim is, in part, based on an interpretation of the language of the policy, it is primarily grounded on the understanding of the parties within the context of the transaction. In *First National Bank of Creston v. Creston Implement Co.*, 340 N.W.2d 777, 781 (Iowa 1983), we discussed the principles of interpretation espoused in the Reporter's Note to comment a and comment b of Restatement (Second) of Contracts § 212 (1979). The Reporter's note to comment a states:

> Cases making a bald "objective-subjective" distinction often refuse to go further unless ambiguity is facially appar-

ent.... This approach is deemed simplistic, for the reason stated in this Comment and Comment *b*.

Comment *a* recognizes that in cases involving misunderstanding as to the meaning of an agreement "there may be a contract in accordance with the meaning of one party if the other knows or has reason to know of the misunderstanding and the first party does not." We recognized this principle in *Hamilton v. Wosepka*, 261 Iowa 299, 306–07, 154 N.W.2d 164, 168 (1967). Comment *b* of the Restatement suggests that the operative meaning of the contract is to be found in the nature of the transaction and within its context. It provides, in part, as follows:

> It is sometimes said that extrinsic evidence cannot change the plain meaning of a writing, but meaning can almost never be plain except in a context. Accordingly, the rule stated in Subsection (1) is not limited to cases where it is determined that the language used is ambiguous. Any determination of meaning or ambiguity should only be made in the light of the relevant evidence of the situation and relations of the parties, the subject matter of the transaction, preliminary negotiations and statements made therein, usages of trade, and the course of dealing between the parties.

Restatement (Second) of Contracts § 212 comment b (1979).

In the present case, certain facts which do not bear directly on the meaning of the words within the insurance policy nonetheless have a significant bearing on the understanding of the parties within the context of the transaction. This is not a case involving blanket wind coverage for all buildings on a particular farm, some of which may be under warranty and some of which may not. The wind coverage for this building was added to plaintiff's policy at the time of its installation and pertains specifically to that single structure. A separate premium charge was made for that coverage.

We believe a jury might reasonably conclude that a county mutual insurance company, such as defendant, dealing largely with farm risks, would be aware that this

new Morton Building® added to plaintiff's policy was under a manufacturer's warranty. If so, defendant purported to sell wind damage coverage to this plaintiff with knowledge that the building being insured was of a type to which its policy did not extend if the disputed clause is given the meaning advocated by the defendant.

Based on these considerations, we conclude that a jury question was engendered concerning plaintiff's expectations of receiving some viable coverage in exchange for the premium which he was paying. We base this contention on general principles of contract law relating to interpretation in accordance with the situation and expectations of the parties. It also appears to be sustainable under the principles of reasonable expectation which we have recognized are peculiarly applicable in the interpretation of insurance policies. *See Rodman v. State Farm Mut. Auto. Ins. Co.*, 208 N.W.2d 903, 906 (Iowa 1973). In such cases, we have indicated an exclusion will not be applied if it "eliminates the dominant purpose of the transaction." *Lepic v. Iowa Mut. Ins. Co.*, 402 N.W.2d 758, 761 (Iowa 1987); *Farm Bureau Mut. Ins. Co. v. Sandbulte*, 302 N.W.2d at 112. The only apparent purpose of the wind damage coverage on plaintiff's Morton Building ® was as a source of indemnification in the event that a wind loss occurred. Under defendant's interpretation, that purpose would be entirely frustrated in spite of the fact that plaintiff was being charged a premium for such coverage.

We affirm the decision of the court of appeals. We affirm that portion of the district court's judgment denying reformation of the policy. We reverse the remaining portions of the district court's judgment and remand the case for jury trial on the remaining issues.

DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.