Lester L. QUIGLEY, Jr., and Veronna Kay Lovell as Guardians and Conservators of Lester L. Quigley, Sr., Appellants,

v.

Donald M. WILSON and Janis D. Wilson, Appellees.

No. 89–1317.

Court of Appeals of Iowa.

Feb. 26, 1991.

278

Lylea Dodson Critelli, Nick Critelli Associates, P.C., Des Moines, for appellants.

L.P. Van Werden and Robert W. Reynoldson, Reynoldson, Van Werden, Kimes, Reynoldson & Lloyd, Osceola, for appellees.

Considered by OXBERGER, C.J., and SCHLEGEL and SACKETT, JJ.

OXBERGER, Chief Judge.

In 1980 Lester Quigley, Sr. sold his farm on contract to Donald and Janis Wilson. The Wilsons made the installment pay-

ments until 1985. In 1985, the Wilsons assigned the contract to Forrest Hatfield. Sometime prior to February 1986, Hatfield informed the Wilsons he could no longer make the payments and returned the farm to them. Donald Wilson then met with Quigley, Sr. to inform him they were also unable to make the upcoming March 1, 1986 payment. After negotiations, Quigley, Sr. and the Wilsons agreed to reduce the contract price along with some other changes from the original contract terms. Both parties signed an agreement dated March 7, 1986, created by Quigley, Sr.'s attorney which reduced their negotiations to writing. Quigley, Sr.'s attorney later recorded the agreement. The Wilsons made all payments due under the 1986 agreement.

Quigley, Sr. is quite elderly and has resided in a nursing home since 1985. In 1988 Quigley, Sr. established a voluntary conservatorship appointing his two children, Lester L. Quigley, Jr. and Veronna Kay Lovell, co-conservators for himself.

The co-conservators filed this lawsuit September 12, 1988, against the Wilsons seeking a declaratory judgment that the Wilsons were in default of the 1980 contract. The Wilsons filed an answer generally denying the claims and asserting the 1986 agreement modified the 1980 contract.

The day before trial the plaintiffs filed a trial brief and motion for partial judgment on the pleadings. They alleged the 1986 agreement was unenforceable due to lack of consideration. The district court overruled the motion finding lack of consideration was not a triable issue because the plaintiffs failed to specially plead it as an affirmative defense.

The case proceeded to trial. The jury found Lester Quigley, Sr. was mentally competent when he entered into the 1986 agreement. The court then held a bench trial on the equitable issues of fraud and undue influence. The court entered a verdict in favor of the Wilsons, finding the 1986 agreement enforceable.

The co-conservators appeal. They contend the issue of lack of consideration should have been submitted to the jury because a reply pleading was unnecessary. They argue the exclusion of the issue prejudiced their case and further assert that based on their defense of lack of consideration, the court should have granted their motion for partial judgment and directed the verdict in their favor. They also claim they were entitled to a jury trial on the equitable as well as legal issues.

 Initially, we consider the proper scope of review. The essential character of a cause of action and the relief it seeks, as shown by the complaint, determine whether an action is at law or equity. *Mosebach v. Blythe*, 282 N.W.2d 755, 758 (Iowa App. 1979). Where the primary right of the plaintiff arises from nonperformance of a contract, where the remedy is money, and where the damages are full and certain, remedies are usually provided at law. *Id.* The issues of Quigley, Sr.'s competency to enter into a contract and whether a lack of consideration invalidated the 1986 agreement are triable at law, therefore, our scope of review of these issues is on assigned error only. Iowa R.App.P. 4.

 First, we address whether the trial court erred in refusing to allow the issue of lack of consideration to be placed before the jury. The trial court, prior to trial, found lack of consideration was an "affirmative defense to an affirmative defense" and therefore needed to be specially pled. The trial court then found that because the plaintiffs failed to specifically plead lack of consideration after the defendants pled the affirmative defense of modification of the underlying contract, the issue of lack of consideration was not before the court and could not be litigated in the trial.

The plaintiffs claim Iowa Rule of Civil Procedure 73 made a reply unnecessary, therefore, they should have been allowed to argue the lack of consideration to the jury. Iowa Rule of Civil Procedure 73 states "The court may order a reply to an answer or to an answer to a cross-petition."

In *Midwest Management Corp. v. Stephens*, 291 N.W.2d 896, 907 (Iowa 1980) the supreme court specifically found recent changes in Iowa's Rules of Civil Procedure

68, 72, and 73 dispensed with the necessity of a reply to affirmative defenses. Because the plaintiffs were not required by rule or court order to file a reply pleading, the trial court erred in requiring the plaintiffs plead the defense of lack of consideration in response to defendant's affirmative defense.

■ Although we find the trial court erred in its rationale for refusing to allow the plaintiffs to develop their lack of consideration defense to the jury, we do not find reversible error. If a basis exists for affirming the trial court, we will do so regardless of whether that basis was relied upon by the trial court. *See Anderson v. Yearous*, 249 N.W.2d 855, 863 (Iowa 1977).

■ In the trial court's findings of fact and conclusions of law the court stated the 1986 agreement appeared to constitute a waiver within the meaning of *In re Guardianship of Collins*, 327 N.W.2d 230 (Iowa 1982). In *Collins*, Ms. Collins decided to eliminate the interest requirement on a land contract in which she was the seller and change the contract to be paid over 12 years instead of the original 24 years. Ms. Collins persisted in her desire, even though counseled it was not a particularly advantageous change. The contract was changed to conform to Ms. Collins' desires and the buyers made payments under the new agreement. Subsequently, a voluntary conservatorship was established for Ms. Collins and the conservator brought suit claiming Ms. Collins was incompetent when she entered the new agreement and the agreement was invalid because it lacked consideration.

The trial court rejected the conservator's contention Ms. Collins was incompetent when she entered the new agreement, but did find the new agreement invalid because it was a modification lacking consideration. *Id.* at 232–33. The supreme court found the agreement constituted a valid waiver stating:

> This court has long held that contract rights can be waived. [citation omitted]. Waiver is the voluntary or intentional relinquishment of a known right. It can be express or implied. The essential elements are the existence of a right, actual or constructive knowledge of it, and an intention to give it up. [citation omitted]. No consideration is required. [citation omitted]. Nor is prejudice necessary. [citation omitted].

*Id.* at 233–34.

The distinguishing factor between the case at bar and the *Collins* case is that in *Collins* the vendor simply made a unilateral decision to waive her right to interest so each payment made by the buyer went entirely toward principal, whereas, Quigley, Sr. and the Wilsons renegotiated a new price and payment schedule.

In the case at bar it could be said that Quigley, Sr. waived the $89,500 difference between the original price of $210,000 and the amended price of $120,500. However, it is difficult to describe the changing of a payment schedule providing for annual payments of $7,000 plus interest to one providing for annual payments of $1,562.50 plus interest along with the changing of the due date for a balloon payment from March 1, 1988, to March 1, 1996 as simply a waiver of payments. Additionally, the amendment provides for changes in the insurance requirements and allows for sale of the mobile home on the property.

These changes constitute more than the seller abandoning a contractual right arising from a contract. They create new and different obligations to be performed by the buyer. We therefore limit waiver to situations where a party to a contract abandons a right that party has under a contract. We categorize situations where contracting parties incur different duties and obligations from those in their original contract as modifications.

Therefore, we do not find the case at bar establishes a waiver, but rather a modification which normally does require consideration. *See Recker v. Gustafson*, 279 N.W.2d 744, 759 (Iowa 1979). In *Recker* which dealt with an oral "modification" to an oral land contract, the court discussed the Iowa law on sufficiency of consideration to support a modification or replacement of a contract. In *Recker* the court

quoted the Restatement (Second) of the law of Contracts § 89D which provides:

> A promise modifying a duty under a contract not fully performed on either side is binding
>
> (a) if the modification is fair and equitable in view of circumstances not anticipated by the parties when the contract was made....

*Id.* at 758.

The *Recker* court also quoted from comment b, Illustration 4 of the Restatement § 89D:

> [t]he reason modification must rest in circumstances not "anticipated" as part of the context in which the contract was made, but a frustrating event may be unanticipated for this purpose if it was not adequately covered, even though it was foreseen as a remote possibility. When such a reason is present, the relative financial strength of the parties, the formality with which the modification is made, the extent to which it is performed or relied on and other circumstances may be relevant to show or negate imposition or unfair surprise.

*Id.*

▆ The *Recker* court declined to adopt the Restatement position because no unanticipated circumstances existed in the case other than a desire for more money. However, the court did not discount its application in appropriate circumstances in the future.

We find the case at bar an appropriate circumstance for the adoption of the Restatement's position. The unanticipated circumstances were the drastic decrease in the value of the land coupled with the seller's concern about tax repercussions from reacquiring the land and the fact the Wilsons had not received any income from the farm for the previous year. Additionally, the new agreement followed negotiations lasting over a period of time, the document was written by the seller's attorney, the trial court found the reduced price was roughly the fair market value of the property at the time the re-negotiations occurred, and the buyers had already paid $58,000 toward principal on the original contract and the balance of the new contract price was $62,500. Additionally, we find it significant the jury found Quigley, Sr. was competent when he entered the 1986 agreement and the trial court found no undue influence or fraudulent misrepresentation involved in the agreement. These factors lead us to find this is a situation where it is appropriate to find the modification fair and equitable and does not require proof of additional consideration.

Although we do not rely on the trial court's reasoning that no consideration was necessary because the 1986 agreement was a waiver, we reach the same result by adopting the Restatement's position and therefore we affirm the trial court's refusal to allow the issue of consideration to be litigated. *See Anderson v. Yearous,* 249 N.W.2d at 863. Based on this decision, the trial court also correctly denied the plaintiff's motion for partial judgment and directed verdict.

▆ Lastly, we address the plaintiffs' assertion the trial court erred in not allowing the jury to decide the equitable as well as the law issues in their case. The plaintiffs argue that since their petition was filed in law and the equitable issues were interrelated with the law issues, the jury should have decided all of the issues regardless of whether the issue was equitable in nature.

The plaintiffs rely on *Wohlenhaus v. Pottawattamie Mutual Insurance,* 407 N.W.2d 572 (Iowa 1987), and *South Central Iowa Production Credit v. Scanlan,* 380 N.W.2d 699 (Iowa 1986), to support their argument. We find no support for their contentions in either case.

In *Wohlenhaus,* 407 N.W.2d at 574, the supreme court found the trial court erred by holding a sua sponte "mini-trial" wherein the court determined no factual issues existed requiring a jury. In *Wohlenhaus* the error did not involve a denial of a jury with respect to equitable issues, but rather, that the trial court improperly conducted a "mini-trial" to decide that no genuine issues of material fact existed in the case.

In *Scanlan,* 380 N.W.2d at 703–04, the court found the defendants had a right to a jury on the legal issues presented in their counterclaim, but also stated a trial court has discretion to permit separate trials of equitable and legal claims. We find the trial court did not abuse its discretion in separately trying the plaintiffs' equitable and legal claims. Additionally we find no legal doctrine which supports plaintiffs' contention they were entitled to a jury on their equitable claims.

AFFIRMED.