FARMBEST, INC., Appellant,

v.

Jack MARTIN, Appellee.

Jack MARTIN, Appellant,

v.

FARMBEST, INC., Appellee.

Nos. 18043, 18045.

United States Court of Appeals
Eighth Circuit.

Dec. 17, 1965.

filed brief with John B. Grier and David C. Nyberg, Sioux City, Iowa.

Before MATTHES and GIBSON, Circuit Judges, and LARSON, District Judge.

LARSON, District Judge.

Defendant below, Farmbest, Inc., appeals from a judgment of the United States District Court for the Northern District of Iowa holding it liable for the cost of repairs to a vehicle it leased from Jack Martin, plaintiff below. In a cross appeal, Jack Martin seeks modification of the judgment to include interest from the date the equipment was damaged. The parties will be referred to as they appeared in the District Court.

The relevant facts are not in dispute. Plaintiff leased a truck-trailer unit to defendant pursuant to a written lease prepared by the latter.[1] A few days after defendant lessee took possession, the vehicle suffered substantial damage in an accident occurring in Utah. The parties agreed that the casualty and resulting damage were attributable to the sole negligence of defendant's employee driver, and that the cost of restoring the vehicle was $14,377.06. They disagree, however, as to which must bear the expense.

Paragraph four of the lease is the focus of this controversy. That provision outlines the method of computing the rental fee and then contains the following:

"From such rental there shall be deducted and retained by Lessee, as reimbursement, all costs incurred by Lessee for repairs, maintenance, fuel, supplies, services, fees, licenses, taxes and all other expenses incurred by Lessee in the maintenance and operation of such leased equipment, * * *. The amount or amounts so to be deducted shall not include driver's wages or expenses, public liabil-

---

H. M. Coggeshall and Michael Figenshaw, Des Moines, Iowa, made argument for Farmbest, Inc., a Kansas corporation and filed printed brief.

Marvin J. Klass, Sioux City, Iowa, made argument for Jack Martin and

---

1. The lease actually was prepared by the Crawford County Packing Company, defendant's predecessor in interest. The lease was assigned to defendant and there is no issue as to whether defendant can be charged with having drafted the instrument.

ity and property damage insurance premiums, if any, cargo insurance premiums, if any, fees or costs for permits, or office salaries, office wages or expenses of Lessee but shall include all other direct costs or expenses of maintaining and operating such equipment. * * *."

The District Court concluded that this provision fails to express a clear intent to exonerate defendant lessee from liability for its own negligence. Construing the lease strictly against defendant, the court held it responsible for the repairs. Judgment was entered accordingly and these appeals followed.

The basis of federal jurisdiction is diversity of citizenship and the parties agree that the law of Iowa is controlling. We will first consider the defendant's appeal.

Defendant contends that the lease unequivocally obligates plaintiff lessor to bear the expense of repairs, and that the court therefore erred in applying the principle that an instrument is to be construed most strongly against the party who prepared it. Plaintiff, on the other hand, maintains that the agreement is ambiguous and thus subject to construction. We think the District Court correctly interpreted and applied the governing law.

■ In ascertaining the intent of parties to a written agreement, reliance upon the various principles of contract interpretation is unnecessary where the instrument clearly and explicitly sets out their understanding. We agree with the District Court that the lease in this case is subject to construction. Paragraph four juxtaposes two categories of expenses—one group to be charged to plaintiff lessor; the other to be assumed by defendant lessee. The former includes the cost of "repairs, maintenance, fuel, supplies, services, fees, licenses, taxes, and all other expenses incurred by the lessee in the maintenance and operation of such leased equipment." The latter category includes "driver's wages or expenses, public liability and property

damage insurance premiums, if any, cargo insurance premiums, if any, fees or costs for permits * * *."

■■ Looking to the expenses which are to be paid by plaintiff lessor, defendant singles out the term "repairs" and asserts categorically that repairs are repairs, regardless of the precipitating force which renders them necessary. The instrument itself is silent as to whether the term includes major repairs necessitated by the lessee's negligence, or whether it is limited to those caused by every day wear and tear. By placing the various expenses in contradistinction, the agreement seems to contemplate a division of costs associated with the operation of the vehicle, but nowhere does it allocate responsibility for damage caused by the lessee's negligence. The general rule is, of course, that one is liable for the consequences of his own negligence. Nothing in the lease explicitly reverses this rule and most jurisdictions, including Iowa, require a clear expression of intent to do so. Sears, Roebuck & Co. v. Poling, 248 Iowa 582, 81 N.W.2d 462 (1957). Annot. 175 A.L.R. 8, 29 (1948). Whether or not the parties intended to do so by paragraph four can appropriately be determined with the aid of well settled principles of contract interpretation.

■ Defendant places particular reliance upon our decision in Northern Natural Gas Company v. Roth Packing Company, 323 F.2d 922 (8th Cir. 1963), wherein we gave effect to a contractual exculpatory clause. That case, also decided under Iowa law, arose out of an explosion on the premises of the Roth Packing Company. The explosion was caused by a leakage of gas, furnished to Roth by Northern. Their contract contained the following provision:

"It is expressly agreed that Company shall not be held liable in damages or otherwise for any interruption or failure, in whole or in part, in gas delivery; nor shall Company be liable for damages to persons and/or property due to or on account

of any such interruption or failure in gas delivery, or due to, or on account of any leakage or escape of gas or in any manner connected with the transportation or handling thereof beyond point of delivery to Customer hereunder, which point is hereby mutually agreed to be at Outlet of meter."

We found this clause unambiguous and thus effective to relieve Northern of liability for negligently allowing gas to escape beyond the designated point of delivery. That agreement is distinguishable from the lease involved here. There was no question as to the type of gas leakage to which it applied. By its terms it covered *any* leakage beyond the agreed upon point. Consequently, there was no need to consider the various circumstances to which the contract applied. The lease in the case before us does not explicitly purport to cover any and all repairs. To that extent, it is ambiguous and subject to construction.

DuFrene v. Kaiser Steel Corporation, 231 Cal.App.2d 452, 41 Cal.Rptr. 834, (Dist.Ct.App.1964), cited by defendant, is also readily distinguishable and in fact underscores the ambiguity of the lease in the instant case. The agreement involved there, covering the rental of several large cranes, provided in part:

"The cost of any and all repairs, maintenance and replacements for the equipment and any loss or damage thereto arising from any cause whatsoever shall be borne by the Lessor * * *"

Finding the agreement unambiguous, the court held it applied even where the lessee's negligence caused the damage. Contrary to the DuFrene case, the lease before us contains no broad language which would suggest that the lessor here contracted to assume the burden of repairs caused by the lessee's negligence. In addition, it is significant that the parties in DuFrene extended an existing agreement to the damaged crane after it had already suffered damage and been

repaired, and gave it a retroactive effective date.

A lease analogous to the one presented here was involved in the Iowa case of Sears Roebuck & Co. v. Poling, supra. That case involved fire damage to a building caused by the negligence of the lessee, Sears Roebuck. Relying on various provisions of a written lease, which it drafted, Sears contended it was not liable for the damage. One provision required Sears to surrender the premises in the same condition as received, but damage by fire was exempted. Another clause placed upon the landlord the burden of rebuilding after a fire. If instead the tenant chose to restore the property, the lessor was nonetheless obligated to bear the expense. Sears argued that these provisions clearly cast the risk of loss by fire upon the lessor. The Iowa court was not persuaded, finding the agreement ambiguous. The court noted in particular that the lease had been drafted by Sears and should, therefore, be strictly construed against it. In addition, the principle of strict construction was invoked on the ground that Sears was attempting to evade liability for its own negligence on the basis of an ambiguous instrument.

■ The provisions requiring the lessor to bear the expense of rebuilding in the Sears case are parallel to the provisions of paragraph four requiring the lessor to repair the vehicle leased in this case. We think that decision is controlling here and requires that the judgment be affirmed.

■ We turn to plaintiff's cross appeal. The single issue presented here is whether interest should run from the date of entry of judgment or from the date of damage, May 6, 1961. While the Court's order for judgment makes no reference to interest, the judgment itself does provide for interest at the legal rate. However, it does not specifically state that it should accrue from the date of damage. Defendant concedes that where property has been negligently injured or destroyed, the law of Iowa per-

mits interest from the date of damage. Similarly, there is no dispute that the legal rate of interest in Iowa is five per cent. Accordingly, the judgment should be modified to include interest at the rate of five per cent from May 6, 1961. As so modified, the judgment will be affirmed.

Before JONES and THORNBERRY, Circuit Judges, and SLOAN, District Judge.